TEXAS & P. RY. CO. v. MINNICK et al.

(Circuit Court of Appeals, Fifth Circuit. June 27, 1893.)

No. 128.

1. MASTER AND SERVANT — PERSONAL INJURIES — DEFECTIVE MACHINERY—INSTRUCTIONS.

In an action to recover damages for the death of a locomotive engineer, which was caused by the burning of a bridge alleged to have been set on fire by a locomotive of defective design, the court refused to charge that, if a person of ordinary care would not have foreseen that the use of engines of this type could reasonably have been expected to result in injury to deceased, then there could be no recovery. *Held*, that there was no error in the refusal, for the instruction was too narrow, in confining the reasonable expectation of injury to the deceased, alone, of all the company's employes.

2. SAME—ASSUMPTION OF RISKS—INSTRUCTIONS.

It appearing that deceased had himself been driving an engine of the alleged defective design, it was error, in the absence of anything on the subject in the general charge, to refuse an instruction that, when deceased took employment as an engineer, he assumed to understand an engine, and knew the dangers attending its use, and was presumed to have taken the risk of being injured by reason of any peculiarity in the construction of the engines in use by defendant.

3. SAME.

It appearing that the company had no watchman or track walker at this bridge at night, and there being evidence tending to show that deceased was aware of the fact, it was error to refuse a charge that if he knew this he assumed the risk of being injured by reason thereof.

4. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.

There is no error in refusing a requested charge, when the court has already given instructions which are, in substance, the same as that requested.

In Error to the Circuit Court of the United States for the Eastern District of Texas. Reversed.

Statement by LOCKE, District Judge:

On the 30th day of January, 1892, W. W. Minnick, an engineer on the Texas & Pacific Railway, while running a train on that railway between New Orleans and Marshall, and at a point near Robeline, in the state of Louisiana, ran into a burning trestle or bridge, and was killed by his engine going through the bridge, and falling upon him. He left surviving him his wife, Maggie Minnick, and five children. On the 23d day of July, 1892, Maggie Minnick, his wife, instituted suit in the district court of Harrison county, Tex., on behalf of herself, and as next friend of her children, against the Texas & Pacific Railway Company, for the sum of $30,000, actual damages, growing out of the death of her husband. This cause was removed to the circuit court of the United States for the eastern district of Texas.

The grounds upon which the defendants in error seek to hold plaintiff in error liable for the death of the said W. W. Minnick, and as set forth in the amended petition filed by the defendants in error in the circuit court of the United States on the 23d day of January, 1893, are, in substance: (1) That the plaintiff in error was negligent in not watching said bridge or trestle; (2) that the plaintiff in error was negligent in operating dangerous and defective engines over and upon said bridge, by which said dangerous and defective engines said bridge was set on fire. Plaintiff in error answered— First, by general denial; second, that the deceased, W. W. Minnick, knew of the dangers attending his employment as locomotive engineer, and assumed and took the risk of such accident as caused his death; third, that there were no defects in the engine used by them, and that said W. W. Minnick, deceased, knew the kind of engine used by plaintiff in error, and that he knew there were no guards or watchmen for the bridge that was burned, and that he had assumed the risk by either of said causes.

At the trial the court charged the jury as follows:

"This is a suit by Maggie Minnick, as the surviving wife of W. W. Minnick, for herself, and for the use and benefit of John R. Minnick, F. W. Minnick, A. B. Minnick, Jennie and Fannie Minnick, as surviving children of said W. W. Minnick, deceased, against the Texas & Pacific Railway Company, for damages sustained by them, as the surviving wife and children of the said W. W. Minnick, for the death of said W. W. Minnick, which, plaintiffs claim, was caused by the negligence of defendant while the said W. W. Minnick was a locomotive engineer in its employ, near the town of Robeline, in the state of Louisiana. Plaintiffs claim that defendant was guilty of negligence in operating an engine on its road, which was defective, dangerous, and out of repair, the condition of which engine was known to defendant, or could have been known to defendant by the use of ordinary care, and which was not known to said W. W. Minnick, and that defendant was further guilty of negligence in not having its bridges, trestles, and road inspected and watched, and failed to exercise ordinary care in inspecting, and keeping in proper repair and condition, said trestles and bridges, which was known to defendant, or could have been known to defendant by the exercise of ordinary care, and all of which was unknown to said Minnick; that a defective engine of defendant set fire to the bridge or trestle through which the engine of deceased, Minnick, fell, and, falling on him, killed him, which was known to defendant, or could have been known to defendant by the use of ordinary care, and which defective engine was unknown to said Minnick; that the burning of said bridge was known to said defendant or could have been known to defendant by the exercise of ordinary care on its part, and that said Minnick did not know it. The defendant pleads a general denial, which general denial throws upon plaintiffs the burden of proving all the allegations in their petition. The defendant also pleads that the deceased, W. W. Minnick, knew of the dangers attending his employment as a locomotive engineer, and assumed and took the risk of such accidents as caused his death. Defendant also pleads that there were no defects in the engine used by it, and that W. W. Minnick knew the kind of engine used by defendant, and that he knew that there were no guards or watchmen for the bridge that

was burned, and that caused said Minnick's death, and that said Minnick took and assumed the risk of being injured by either of said causes. These are substantially the issues made between the parties, as made by their pleadings.

"The jury are instructed that it was the duty of the defendant company to use all reasonable care and prudence for the safety of those in their service, by providing them machinery, or other instrumentalities reasonably safe and suitable for the use of the servant. If the defendant company failed in this duty of precaution and care, it is responsible for an injury which may happen through a defect of machinery or other instrumentalities, which was known to defendant, or could have been known to defendant by the exercise of reasonable care and prudence on its part. If the jury believe from the evidence that, at the time of the death of said W. W. Minnick, he was in the service of defendant company as a locomotive engineer, engaged in operating an engine over the line of railway of defendant company in the state of Louisiana, and that said Maggie Minnick is his surviving wife, and that said John R. Minnick, F. W. Minnick, A. B. Minnick, Jennie Minnick, and Fannie Minnick are minors, and the surviving children of said W. W. Minnick, and that a defective and dangerous engine of defendant set fire to a bridge in the said line of railway of defendant, and thereby rendered the said bridge unsafe and dangerous, and unfit for the purposes for which it was being used by defendant, and thereby caused the death of W. W. Minnick, and you further believe the defendant knew that said engine was defective and dangerous, or by the exercise of reasonable care and prudence could have known of the condition of such defective and dangerous engine, and that defendant failed in this duty of precaution and care, and that by reason of such failure on the part of said defendant the said Minnick was killed, then you will find for plaintiffs, unless you find for defendant under some other instruction. Or if the jury believe from the evidence that one of the bridges in the line of railway of defendant company was defective and dangerous, and unfit for the purpose for which it was being used by the defendant company, by reason of its being in a burnt condition, and the jury further believe that defendant company knew of such defective and dangerous and unfit condition of said bridge, or could have known of its condition by the exercise of reasonable care and prudence, and failed in its duty of precaution and care, and that said defective and dangerous condition of said bridge was the proximate cause of the death of the said W. W. Minnick, and that, at the time of the death of the said Minnick, he was in the service of the defendant, engaged in operating an engine over the said line of railway of the defendant company, as a locomotive engineer, and that said Maggie Minnick is the surviving wife of said W. W. Minnick, and that John R. Minnick, A. B. Minnick, F. W. Minnick, Jennie Minnick, and Fannie Minnick are the surviving minor children of said W. W. Minnick, then the jury will find for the plaintiffs, unless you find for the defendant under some other portion of these instructions. If the jury believe from the evidence that the engine of defendant company, which it is claimed set fire to the bridge, was reasonably safe for the purpose for which it was being used by defendant, although not of the best or newest or safest, then the jury will find for the defendant. If the jury believe from the evidence that either the said bridge in defendant's said line of railway was not unsafe or dangerous, although not of the safest or best character, or if the jury believe from the evidence that the engine used by defendant, which it is claimed set fire to the bridge, was not unsafe or dangerous, although not as safe as other engines, then the jury will find for the defendant. Or if the jury shall find from the evidence that both the said bridge in the line of railway of defendant, and said engine of defendant, which it is claimed set fire to the bridge, were unsafe or dangerous, yet if the jury believe from the evidence that neither of these causes resulted in the death of the said W. W. Minnick, nor were the proximate causes producing the injury whereof he died, then the jury will find for the defendant. It is incumbent on plaintiffs, before they can recover, not only to prove the defects complained of existed, but also that they, or one of them, were the cause of the death of said Minnick. If the death of the said Minnick was the result of accident, misadventure, or the want of ordi-

nary care or prudence on his part, or other causes not complained of, then the jury will find for the defendant. If W. W. Minnick knew of the condition of the engine of defendant, which it is claimed set fire to the bridge, or knew of the condition of said bridge, or if said Minnick could have known of the condition of said engine or bridge by reasonable care and prudence on his part, then plaintiffs cannot recover. In case you find for the plaintiffs under the above and foregoing instructions, then you will find for them in such sum as will compensate them for the pecuniary loss they may have sustained by reason of the death of said W. W. Minnick, taking into consideration their circumstances in life, the probable pecuniary benefits that would have inured to them if said Minnick had lived, whereof you have to form the estimate according to the best lights which your reason and experience may afford you, and the testimony may have furnished. The average age of human life, and the life expectancy of deceased, as shown by approved life tables, are simply aids to your judgment, but are not conclusive upon the judgment. Your reasonable common sense, and the evidence, must form the estimate of the amount of loss; and, in case you find for plaintiffs, you will apportion the damages among plaintiffs according as you may think proper, under all evidence in the case, stating in your verdict what you find, and how you apportion the same among the plaintiffs. In case you find for the defendant, you will simply say so."

Whereupon the defendant requested the court to charge the jury as follows: "First. In this case there is no evidence that it is claimed set fire to the bridge was out of repair. But it is claimed that the kind of engine used was defective in original construction. Upon this point you are instructed as follows: The railway company had a right to adopt proposed improvements in engines, by which the escape of fire is lessened, if in doing so they use the care that an ordinarily prudent man would exercise under similar circumstances. Second. The railway company is not compelled to use the safest engines, and may test proposed improvements in engines, if they use ordinary care in doing so. Third. If a person of ordinary care would not have foreseen that the use of the engines with a Brown stack would or could have been reasonably expected to have resulted in injury to Minnick, then plaintiff cannot recover. Fourth. If the engines in use threw less fire out of the smokestack, then the fact that it threw more fire out of the ashpan would not constitute such negligence as to make the company liable in this case. Fifth. When Minnick took employment as an engineer, he assumed to understand an engine, and to know whatever dangers attend its use, and in this case Minnick is presumed to have taken the risk of being injured by reason of any peculiarity in the construction of the engine used by the defendant. Sixth. There is no law that compels the company to have track walkers or watchmen at their bridges at night, at all times. If Minnick knew there were no track walkers or watchmen at this bridge, he assumed the risk of being injured by reason of the fact that there were no track walkers or watchmen."

Which instructions the court refused. The trial resulted in a verdict and judgment for $13,500, from which the plaintiff in error has taken a writ of error to this court, assigning as error the refusal of the court below to give each of the instructions asked.

T. J. Freeman and F. H. Prendergast, for plaintiff in error.

W. H. Pope and W. C. Lane, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts as above.) The only assigned errors which we are called upon to consider are those alleged to have been committed in a refusal to give the charges requested. The charge given by the court was very full, covering very largely all questions which might arise in the case; but it is

claimed by plaintiff in error that, upon the points upon which instructions were asked, the law was not stated to the jury, or, if at all, not so fully and clearly as the circumstances and evidence of the case would demand. Considering each requested instruction in the order asked, we find the first asking that the jury be instructed that there was no evidence that the engine that is claimed to have set fire to the bridge was out of repair, but it is claimed that the kind of engine used was defective in original construction, and they be instructed as follows:

"The railway company had the right to adopt proposed improvements in engines, by which the escape of fire is lessened, if in doing so they use the care that an ordinarily prudent man would exercise under similar circumstances."

A careful examination of the testimony shows that the question is properly stated in such instruction. The contest through the entire case was not the bad condition of the engine which is claimed to have set fire to the bridge, but the mode of construction, and the attempted disposition of the sparks and cinders from the engines in those provided with the so-called Brown stack, and we fail to find any evidence showing that that particular engine was out of repair, but it was one with a Brown stack, and many of the engines had been furnished with such for the purpose of arresting sparks, and preventing their escape from the stack, and forcing them into the ashpan. But would this instruction add anything, in behalf of plaintiff in error, to what had already been given? The court had already instructed the jury as follows:

"If the jury believe from the evidence that the engine of defendant company, which it is claimed set fire to the bridge, was reasonably safe for the purpose for which it was being used by defendant, although not of the best or newest or safest, then the jury will find for the defendant."

And also charged the jury:

"Or if the jury believe from the evidence that the engine used by defendant, which it is claimed set fire to the bridge, was not unsafe or dangerous, although not as safe as other engines, then the jury will find for the defendant."

This instruction was, if they found the engine "reasonably safe for the purpose, though not of the best or newest," or "not unsafe or dangerous, though not as safe as other engines," they should find for the defendant. It cannot be urged that substituting, in the measure of the condition of the engine, "one not unsafe or dangerous," for "one that an ordinarily prudent man would use," would permit the employment of one of inferior condition. In finding a verdict under the instructions given, they had to pass upon the question of the condition of the engine,—whether or not it was reasonably safe for the purpose; and under the instructions asked they would only have had presented the question whether, in using it, the company would be using the care an ordinarily prudent man would exercise. We consider the charge, as given, covered that point of law, and was fully as favorable to plaintiff in error as was that asked.

It was not a contested point whether or not the engine under inquiry was or was not out of repair, any more than in the manner of its construction, and the judge was not bound to instruct the jury that there was no evidence upon that point. It is true the whole condition of the engine on account of its construction was only in question, but we do not consider that an ordinarily prudent man would be justified in using an engine not reasonably safe in its construction, although it might be a proposed improvement. This conclusion would apply with equal force to the second instruction asked, as we do not consider that a railway company would be justified in using an engine "not reasonably safe," but "unsafe and dangerous," for the length of time it appears the Brown stack had been used, although it might be testing proposed improvemen s. We therefore consider there was no error in refusing the first and second requested instructions, as the subject-matter had already been included in the general charge.

But, when we examine the third instruction asked, we fail to find anything in the general charge that would cover the point there requested. Plaintiff below had alleged in her petition that defendant company had been operating defective and dangerous engines over and upon its line of road, by which the bridge was set on fire and burned, and that the defective and dangerous condition of the engine was known to defendant company, or could have been known by the use of ordinary care and diligence, and this knowledge, or the fact that it should have had such, becomes a question of law, which certainly might have weight in determining the case; and inasmuch as it does not appear, as affirmatively proven, that any one who represented the company was informed of such defect, the question whether a person of ordinary care would or would not have foreseen, or would or would not have reasonably expected, such a disaster from the use of the engine complained of as did result, should certainly have been submitted to the jury. But, while the knowledge or presumed knowledge or reasonable expectation might be inquired into, the language of the request would seem to confine the question to a limit altogether too narrow in its application. A person of ordinary care might foresee a disaster, and anticipate it,—might, on account of defective machinery or appliances, be constantly fearing and expecting it,—and yet not foresee or reasonably expect the particular individual who would be involved in it. As requested, the charge would prevent a verdict for plaintiff unless they found from the evidence that the use of the Brown smokestack would give a person of ordinary care a reasonable expectation that Minnick, of all the hundreds of employes engaged on the road would be the one injured. As asked, we find no error in refusing the instruction, but, if modified as we find it quoted in the brief of the plaintiff in error, making the foreseen or reasonably expected injury to some employe of the road, we consider it should be given.

The fourth assignment of error is not insisted upon.

The fifth assignment relates to the risks assumed by Minnick in his accepting employment from defendant company, and we fail

to find in the given charge any instructions upon that point. It was stated by the judge to be a plea in defense of the suit, that Minnick knew of the dangers attending his employment, and assumed and took the risk of such accidents as caused his death; but the record does not disclose that any charge was given upon that point, although it was a question of law. The instructions asked have to be examined in the light of the evidence of the case. The only contest in this case has been that the peculiarity in the construction of the engine with the Brown stack was what set fire to the bridge. It appears that Minnick was well acquainted with such peculiarity, as he was himself driving one. We think it a well-established principle of law that an employe assumes the risks ordinarily incidental to the business, and the manner of the employer's performing it, where there is no defect of machinery, or unknown hazards. The absence of any instruction in the general charge upon the subject of risks assumed by the employe in accepting employment would, in our opinion, justify the asking of a special instruction upon that point, and that asked appears justified by the law and evidence of the case.

The same argument would apply with equal force to the sixth instruction asked. The substance of it is that, if Minnick knew that there were no track walkers or watchmen at the bridge, he assumed the risks of disasters which might occur through their absence. Such absence would appear to be properly classed as a peculiarity of the manner of the employer's carrying on his business. It was apparently open and well known to many of the employes, and whether Minnick knew of it or not is a question correctly left to the jury.

In not giving in the general charge or any special instruction the liability assumed by the plaintiff, we consider the court below erred, to the injury of the plaintiff in error. It is therefore ordered that the judgment be reversed, and the cause be remanded for a new trial.